56,032-03

TERRY LOU TRAVIS
  APPLICANT
         V.
336 DISTRICT COURT

GRAYSON COUNTY
SHERMAN TEXAS

CAUSE # 046819

RECEIVED IN
COURT OF CRIMINAL APPEALS

NOV 30 2015

Abel Acosta, Clerk

BRIEF ASKING THE HONORABLE COURT OF APPEALS TO REVERSE THE 336TH DIST COURTS DECISION NOT TO GRANT RELIEF IN CAUSE# 046819.

ASKING THE HONORABLE COURT OF APPEALS TO PLEASE REVIEW THE JUDGEMENT OF THE 336TH DISTRICT COURTS DECISION ON APPLICANTS 11.07 WRIT OF HABEAS CORPUS.

APPLICANT FILED AN APPLICATION FOR 11.07. THE 11.07 WAS FILED FOR RECORD ON MARCH 13 2015 AND WAS DENIED. THE DENIAL WAS FILED FOR RECORD ON JUNE 11-2015. THE PRESIDING JUDGE WHO SIGNED OFF ON THE DENIAL WAS THE HONORABLE BRIAN GARY OF THE 397TH DIST COURT OF GRAYSON COUNTY TEXAS. ON JULY 8 2015 THE COURT OF CRIMINAL APPEALS IN AUSTIN TEX. DISMISSED MY 11.07 WITHOUT WRITTEN ORDER.

ON APRIL 8TH 2015 JUDGE BRIAN GARY ISSUED AN ORDER DESIGNATING FACTS TO BE RESOLVED. THE ISSUES TO BE RESOLVED IN THE ORDER WAS.

① WAS THE TESTIMONY OR WORK PRODUCT OF DIANNE MONAGHAN USED OR ADMITTED INTO EVIDENCE IN THE APPLICANTS TRIAL ?

MY RESPONSE TO THE ORDER WAS AN AFFIDAVIT ANSWERING THE ORDER (SEE APPENDIX A.)

APPLICANTS GROUND NUMBER ONE ALLEDGES PROSECUTAL MISCONDUCT FOR FAILING TO PRODUCE BRADY MATERIAL REGARDING A FINGER PRINT ANALYST NAMED DIANNE MONAGHAN WHO HAD BEEN FORCED TO RESIGN FROM THE DEPARTMENT OF PUBLIC SAFETY CRIME LAB IN AUSTIN. (COURTS FINDING OF FACTS # 5) TELLS ON FEB 21-200 THE APPLICANTS ATTORNEY ACKNOWLEDGE FOR THE RECORD THAT HE WAS AWARE THAT DIANNE MONAGHAN WAS NO LONGER EMPLOYED WITH THE D.P.S. LAB. AND HAD BEEN BRIEFED REGARDING THE CIRCUMSTANCES HER SURROUNDING HER DEPARTURE FROM D.P.S. (RR VOL 3 P.P. 26-29) (COURTS FINDING OF FACTS # 5) IS PARTLY TRUE MY ATTORNEY DID ACKNOWLEDGE FOR THE RECORD THAT HE WAS AWARE THAT DIANNE MONAGHAN WAS NO LONGER WITH THE D.P.S. LAB. BUT NOTHING WAS MENTIONED ABOUT HER FALSIFYING GOVERMENT DOCUMENTS ON THIRTEEN CASES SHE HAD WORKED ON BEFORE SHE GOT TO MY CASE, BUT GROUND NUMBER ONE IS NOT JUST ABOUT MONAGHAN NOT BEING AT MY TRIAL. BUT ABOUT THE PROSECUTION OR MY ATTORNEY NOT TELLING THE JURY OR ME ABOUT MONAGHAN FALSIFYING GOVERMENT DOCUMENTS ON THE THIRTEEN CASES BEFORE MY TRIAL AND THAT SHE HAD BEEN FORCED TO RESIGN FOR MISHANDLING AND FALSIFYING EVIDENCE. THERE IS NO WAY THE PROSECUTION COULD NOT HAVE KNOWN THE TRUE CIRCUMSTANCES SURROUNDING MONAGHANS FORCED RESIGNATION. FROM D.P.S.

(COURTS FINDING OF FACTS #8 PAGE 3) STATES THE FACTS REGARDING DIANNE MONAGHAN WAS KNOWN TO THE APPLICANT MANY YEARS PRIOR TO THE SUBMISSION OF THE SUBMISSION OF THE APPLICANTS FIRST 11.07. (FACT #8) IS NOT TRUE. IT WAS NOT UNTIL AFTER MY TRIAL THAT I LEARNED WHY MONAGHAN WAS NOT AT MY TRIAL. NO WHERE IN THE DISCOVERY, TRIAL TRANSCRIPTS, POLICE REPORTS, OR LAB REPORTS OR ANY OTHER DOCUMENTS PERTAINING TO CASE OR TRIAL IS THERE ANY MENTION OF THE THIRTEEN CASES SHE FALSIFIED DOCUMENTS ON. AND AS FAR AS MONAGHAN ALLEDGING SHE FOUND A BLOODY FINGERPRINT BELONGING TO ME IT WAS NEVER MENTIONED IN THE DISCOVERY. AND ACCORDING TO THE (TRIAL TRANSCRIPTS VOL 4 PAGE 58-59) THERE NEVER WAS A REPORT OF A BLOODY FINGER PRINT BEFORE JULY-12-1999. JULY-12-1999 WAS THE DAY I WAS ARRESTED. I BELIEVE THE BLOODY PRINT THEORY WAS MADE UP TO GET A WARRANT ISSUED ON JULY 12-1999 AND AN INDICTMENT BECAUSE THEY HAD NO EVIDENCE. THE PRINT WAS PHOTOGRAPHED IN BLACK AND WHITE AND BLOOD SAMPLES WERE TAKEN FROM AN ADJOINING AREA THERE IS NO WAY TO PROVE THE PRINT WAS A BLOODY PRINT. THIS PRINT WAS SUPPOSEDLY FOUND AND PHOTOGRAPHED ON MAY-20-1999. FIFTY-THREE DAYS BEFORE I WAS ARRESTED. WHY WOULD THEY WAIT FIFTY THREE DAYS TO MAKE A REPORT ON SOME EVIDENCE AS IMPORTANT AS A BLOODY FINGERPRINT. A FINGER PRINT CAN BE IDENTIFIED ALMOST IMMEDIATELY AND I KNOW I WAS THE FIRST ONE THEY RAN A MATCH AGAINST. SOME THINGS NOT RIGHT THERE. I DON'T DOUBT THEY HAVE A PRINT OF MINE THEY SHOULD HAVE FOUND MANY PRINTS OF MINE. I RODE IN THE VICTIMS TRUCK REGULARY. PLUS THE LAB REPORTS TELL OF MANY OTHER PRINTS THEY FOUND ON THE TRUCK THAT THEY NEVER EVEN TRIED TO IDENTIFY.

(COURTS FINDING OF FACTS #7) STATES THE STATE DID NOT SUPPRESS THE FACTS AND/OR EXISTINCE OF MISS MONAGHAN'S TERMINATION OF D.P.S. THIS IS TRUE HOWEVER THEY DID SUPPRESS THE FACT AS TO WHY DIANNE MONAGHAN WAS TERMINATED.

(COURTS FINDING OF FACTS #9 PAGE 3) STATES CREDIBLE TESTIMONY AT TRIAL BY CHARLES JOE PARKER MADE IT CLEAR THAT KENT KENCAID PHOTOGRAPHED THE LATENT PRINT IN THIS CASE (RR VOL 4 PP 126-132) (VOL 4 PAGES 130-131 TRIAL TRANSCRIPTS) MAKES IT CLEAR THAT KENT KENCAID WAS WORKING UNDER DIANNE MONAGHAN'S SUPERVISION WHEN HE PHOTOGRAPHED THE PRINT (SEE APPENDIX A (ISSUE OF FACTS TO BE RESOLVED)

(COURTS FINDING OF FACTS # 10 PAG 3) STATES CREDIBLE TESTIMONY BY CHARLES JOE PARKER MADE IT CLEAR MADE IT CLEAR THAT MR PARKER COMPARED THAT LATEN PRINT TO A KNOWN INKED PRINT OF THE APPLICANT AND MADE A COMPARISON OF THE TWO PRINTS WITHOUT RELYING ON ANY CONCLUSION OR WORK PRODUCT OF MONAGHANS (RR VOL 4 (PP. 126-132)

(VOL 4 PAGES 126-127 TRIAL TRANSCRIPTS) REVEALED THAT STATES EXHIBIT NUMBER 75 OF A LATEN PRINT THAT I PARKER IDENTIFIED SERVERAL WEEKS AGO.

(VOL 4 PAGE 128 TRIAL TRANSCRIPTS) REVEALED THAT STATES EXHIBIT NUMBER 75 PROVED TO BE PART OF DIANNE MONAGHAN'S WORK PRODUCT WAS A MATCH TO MY LEFT RING FINGER. (SEE APPENDIX A ISSUES OF FACTS TO BE RESOLVED)

(CONCLUSION OF LAW #10) STATES IN ORDER FOR APPLICANT TO RAISE ANY ISSUE REGARDING A BRADY VIOLATION IN A SUBSEQUENT WRIT HE MUST PROVE THAT THE FACTS UNDERLYING THAT ALLEGATION WERE NOT AVAILABLE TO HIM PRIOR TO THE LAST 11.07 FILED IN THIS CASE ACCORDING TO (COURTS FINDING OF FACTS PAGES 1-2) MY SECOND 11.07 WAS FILED ON FEBRUARY 8-2004. I HAVE A REQUEST FORM FROM THE AUSTIN PUBLIC LIBRARY DATED JANUARY-28-2005 WHERE I WROTE THE LIBRARY ARCHIVES ASKING FOR INFORMATION ON MONAGHAN'S TERMINATION. ALSO DUE TO THE FACT THAT IT WAS NEVER MENTIONED IN ANY OF THE PAPER WORK PERTAINING TO MY CASE OR MY TRIAL. THERE IS NO WAY I COULD HAVE KNOWN PRIOR TO THE LAST 11.07 FILED IN THIS CASE. THERE IS NO WAY I COULD HAVE MISSED PUTTING THAT INFORMATION IN MY FIRST 11.07. THE FACT THAT MONAGHAN HAD BEEN FORCED TO RESIGN FOR FALSIFYING GOVERMENT DOCUMENTS ON THIRTEEN CRIMINAL CASES. ANY THING PERTAINING TO MONAGHAN'S WORK PRODUCT SHOULD NEVER HAVE BEEN ADMITTED INTO EVIDENCE. MONAGHAN LATER PLED GUILTY TO THE CHARGES AGAINST HER AND RECIEVED FIVE YEARS PROBATION.

THAT IS JUST PART OF HOW THEY DID ME WRONG ON MY APPEALS. THE CASE WAS MISHANDLED FROM DAY ONE.

SOME MORE IMPORTANT FACTS CONCERNING THE WAY THE CASE WAS MISHANDLED. THE VICTIM IN THE CRIME WAS A WOMAN NAMED CHERROL HORNER BUTCHER. SHE CAME TO MY HOUSE ON MAY 17-1999. SHE LEFT LATER THAT NIGHT AND THAT WAS THE LAST TIME I SAW HER ALIVE. HER TRUCK WAS FOUND THE NEXT DAY HOR 5 MILES FROM MY HOUSE. CHERROL WAS ALREADY REPORTED AS A MISSING PERSON WHEN HER TRUCK WAS FOUND. ON MAY 18-1999 OFFICER DANIEL ROMINES BADGE# 5013 WROTE HIS REPORT AT 11:22 P.M. STATING THAT AFTER SPEAKING WITH LESLIE HORNER (LESLIE HORNER WAS CHERROL BUTCHER'S DAUGHTER) SGT D.L. BROWN BADGE# 7105 DETECTIVE DICK ROGERS AND I WENT TO THE LOCATION TO "VISUALLY INSPECT THE TRUCK, NOTHING APPEARED TO BE OUT OF ORDER WITH THE TRUCK." LESLIE WAS CONTACTED TO RETRIEVE THE TRUCK. THERE IS ALSO AN INCIDENT/OFFENSE REPORT IN THE DISCOVERY FROM THE GRAYSON CO. SHERIFFS DEPT. STATING THAT OFFICER DANIEL ROMINES WAS DISPATCHED AT 23:05 AND ARRIVED 23:22 AND WAS CLEARED AT 1:32 A TOTAL OF 2 HRS 27 MINUTES THAT THESE THREE SPENT VISUALLY INSPECTING THIS TRUCK WHICH WAS A WHITE TRUCK AND IF THERE HAD BEEN AS MUCH BLOOD ON THIS WHITE TRUCK AS LATER REPORTS WOULD REVEAL. THEY COULD NOT HAVE MISSED THIS MUCH BLOOD. ON MAY 20-1999 OFFICER DAVID BROWN BADGE# 7105 WROTE HIS REPORT CONFIRMING THAT ON MAY 18-1999 THE TRUCK OF CHERROL BUTCHER WAS RELEASED TO LESLIE HORNER. THE NEXT DAY MAY-19-1999. LESLIE SAYS IN HER STATEMENT THAT AT 9:00 A.M CHERROLS HUSBAND THOMAS BUTCHER CAME TO HER HOUSE AND TOLD HER OF ALL THE BLOOD IN AND ON CHERROL'S TRUCK. LESLIE ALSO ADMITS THAT THE TRUCK WAS STILL IN HER POSSESION ON THE MORNING OF MAY-19 AT 9:00 A.M. THE COURT HAS THE TESTIMONY OF DNA EXPERT KARIN SCALISE OF THE DEPARTMENT OF PUBLIC SAFETY WHO TESTIFIED THE BLOOD OF CHERROL BUTCHER WAS ALL OVER THE TRUCK INSIDE AND OUT AND THAT IT WOULD BE HARD TO BE IN OR AROUND THIS TRUCK AND NOT GET BLOOD ON YOU. AND NO BLOOD WAS FOUND ON MY CLOTHES OR BOOTS THAT THE POLICE SAY I WAS WEARING WHEN CHERROL WAS KILLED. THE REPORTS REVEAL CHERROLS BLOOD WAS ON THE STEERING WHEEL, DRIVERS SIDE SEAT, FLOOR MAT, DRIVERS DOOR HANDLE, TAILGATE/

BLOOD UNDERNEATH, BLOOD ON THE LEFT AND RIGHT SIDES. IT IS COMMON SENSE THAT WHO EVER GOT INTO THAT TRUCK BETWEEN 11:00 P.M MAY 18 UP TO ABOUT 9:00 A.M. ON MAY 19 EITHER KILLED CHERROL OR KNOW WHO DID. THREE TRAINED PROFESSIONALS COULD NOT HAVE MISSED THIS MUCH BLOOD ON A WHITE TRUCK. THAT MEANS THERE WAS NO BLOOD ON THE TRUCK WHEN LESLIE TOOK POSSESION OF THE TRUCK. CHERROL WAS A MISSING PERSON WHEN ~~SHE IS~~ THESE THREE VISUALLY INSPECTED THE TRUCK. AND THEY KNEW IT. THIS TRUCK SHOULD NEVER HAVE BEEN RELEASED TO LESLIE OR ANY ONE ELSE. THE TRUCK SHOULD HAVE BEEN IMMEDIATELY IMPOUNDED AND PROPERLY INSPECTED FOR EVIDENCE.

THERE WERE SOME OF THE HUSBANDS CLOTHES TAKEN FROM THE BUTCHERS HOME THESE CLOTHES LATER TESTED POSITIVE FOR BLOOD BUT NO D.N.A. TESTING WAS EVER DONE. TO SEE WHOSE BLOOD IT WAS.

LT. GARY ROBINSON REPORTS IN THE DISCOVERY THAT HE GOES TO THOMAS AND CHERROL BUTCHERS HOME AND TAKES A T-SHIRT, JEANS, AND A SOCK BELONGING TO THOMAS BUTCHER ACCORDING TO ROBINSONS REPORT "THERE ARE STAINS ON THESE CLOTHES. THESE CLOTHES ARE TO BE RETAINED AS POSSIBLE EVIDENCE" THESE CLOTHES WERE TAKEN FROM BUTHERS HOME ON MAY-20-1999 AND NOT TESTED FOR BLOOD UNTIL THE SECOND DAY OF MY TRIAL WHICH WAS FEBRUARY 23-2000 ALMOST 10 MONTHS LATER. THE CLOTHES WAS TAKEN TO THE LAB IN GARLAND TEXAS DURING LUNCH BREAK AND THE CLOTHES TESTED POSITIVE FOR BLOOD. YET NO D.N.A TESTING WAS EVER DONE. MY LAWYER ASKED FOR NO CONTINUANCE TO GET D.N.A. TESTING DONE. KARIN SCALISE TESTIFIED AT TRIAL THAT MITZI MCEVOY THE INVESTIGATOR FOR THE D.A'S OFFICE TOLD HER TO HOLD OFF TESTING THE CLOTHES. SHE DIDNT WANT THEM TESTED FOR SOME REASON. (VOL 4 PAGE 18 TRIAL TRANSCRIPTS) LT. GARY ROBINSON SWORE UNDER OATH THAT THERE WAS NOTHING INCRIMINATING ON THOMAS BUTCHERS CLOTHES AND THEY HAD NOT EVEN BEEN TESTED YET. THATS THE KIND OF TRIAL I HAD.

SGT D.L. BROWN BADGE# 7105 STATES IN ANOTHER REPORT THAT HE RECIEVED A PHONE CALL FROM ATTORNEY DAVID WILSON. THE BUTCHERS FAMILY ATTORNEY. WILSON STATED HE HAD SPOKEN TO MARSHALL HORNER THE VICTIMS SON. ATTORNEY WILSON SAID THAT MARSHALL HORNER SAID THAT HE HAD SEEN BLOOD AT HIS MOTHERS HOUSE AND MAY KNOW WHERE HIS MOTHER WAS BURIED. OFFICER BROWN SAID HE PASSED THIS INFORMATION ALONG TO CAPTAIN FOSTER. I HAVE NEVER SEEN A REPORT FROM CAPTIAN FOSTER AS TO WHERE HE FOLLOWED UP ON THIS INFORMATION. AT THE TIME MARSHALL HORNER GAVE THIS INFORMATION HIS MOTHER WAS ONLY A MISSING PERSON NO BODY HAD BEEN FOUND YET- AND WHEN CHERROL WAS FOUND SHE WAS BURIED "HOW COULD MARSHALL HORNER HAVE KNOWN HIS MOTHER HAD BEEN BURIED BEFORE A BODY HAD EVEN BEEN FOUND?" ATTORNEY WILSON TESTIFIED TO THIS AT MY TRIAL BUT THE JUDGE SENT THE JURY OUT OF THE COURTROOM BECAUSE IT WAS HEARSAY EVIDENCE MY LAWYER SAID HE WAS GOING TO CALL MARSHALL HORNER TO TESTIFY BUT HE NEVER CALLED HORNER. THE JURY SHOULD HAVE HEARD THIS. THIS WAS VITAL EVIDENCE.

THAT IS JUST PART OF WHAT THE INVESTIGATION AND MY TRIAL WAS LIKE AND MY APPEALS. ANY THING TO DO WITH THE FAMILY THEY COVERED IT UP AND LIED. THE HUSBAND WAS THE ONE WHO CALLED THE POLICE ABOUT THE BLOOD ON THE TRUCK. BUT WHEN THE POLICE GOT THERE HE LEFT WOULDN'T EVEN TALK TO THEM SAID HE HAD TO GO TO WORK. FIGURE THAT ONE OUT UNLESS HE ALREADY KNEW WHAT HAPPENED TO CHERROL. BECAUSE HE WASN'T INTRESTED IN TRYING TO FIND OUT.

THE VICTIMS DAUGHTER LESLIE HORNER WAS CALLED TO TESTIFY BUT DIDNT EVEN SHOW UP FOR COURT. AND THE SON MARSHALL HORNER KNEW WHERE SHE WAS BURIED. THE FAMILY KILLED HER AND EVERY THING POINTS TO THEM. THERES MORE THAN WHAT IVE TOLD YOU BUT IM TRYING TO KEEP THIS BRIEF SHORT AS POSSIBLE AND STILL GET THE MAIN INFORMATION IN IT. THERES MORE EVIDENCE THAT POINTS TO THE FAMILY. BUT IF I HAVENT GOT YOU INTRESTED BY NOW IM PROBABLY NOT GOING TO. IM INNOCENT OF THIS AND HAVE DONE EVERY THING I KNOW TO DO TO GET MY CONVICTION OVERTURNED. I DIDNT EVEN KNOW I COULD FILE THIS BRIEF UNTIL A COUPLE OF DAYS AGO.

THE CONVICTING COURT TOLD THE APPEALS COURT JUST ENOUGH TO SKIRT THE TRUTH AND TO KEEP FROM LYING. MY AFFIDAVIT DESIGNATING ISSUES OF FACTS TO BE RESOLVED TELLS A LITTLE DIFFERENT STORY. THE TRIAL TRANSCRIPTS WILL PROVE WHAT I SAY. MY RIGHT TO DUE PROCESS AS GUARANTEED TO ME UNDER THE DUE PROCESS CLAUSE OF THE 14TH AMENDMENT, MY RIGHT TO EQUAL PROTECTION OF THE LAW AND SUCH OTHER RIGHTS GUARANTEED TO THE APPLICANT UNDER BOTH STATE AND FEDERAL LAW HAVE BEEN VIOLATED AND ABUSED BY THE CONVICTING COURT.

I NEED YOUR HELP TO GET RELIEF ON THIS CONVICTION.

TERRY LOU TRAVIS  #933989
APPLICANT PRO SE

9601 SPUR 591
CLEMENTS UNIT
AMARILLO, TEXAS 79107

## INMATES DECLARATION

I TERRY LOU TRAVIS TDCJ# 933989 DECLARE UNDER PENALTY OF PERJURY THAT ACCORDING TO THE TRIAL TRANSCRIPTS, POLICE REPORTS, LAB REPORTS, AND TO THE BEST OF MY KNOWLEDGE. THE FOREGOING INFORMATION AND ALLEGATIONS OF THE BRIEF ARE TRUE AND CORRECT.

SIGNED ON 11-23-2015

Terry Lou Travis # 933989

APPLICANT                                     IN THE 336TH DIST COURT
TERRY LOU TRAVIS                              GRAYSON COUNTY
                                             SHERMAN, TEXAS

AFFIDAVIT DESIGNATING ISSUES OF FACTS TO BE RESOLVED

THE FOLLOWING ISSUES THAT NEED TO BE RESOLVED ARE:

1. WAS THE TESTIMONY OR WORK PRODUCT OF DIANNE MONAGHAN USED OR ADMITTED INTO EVIDENCE IN THE APPLICANTS TRIAL?

DIANNE MONAGHAN'S WORK PRODUCT WAS USED AND ADMITTED INTO EVIDENCE BY CHARLES JOE PARKER ANOTHER D.P.S CRIME LAB FINGER PRINT EXAMINER IN (VOLUME 4 PAGES 122-123 OF TRIAL TRANSCRIPTS) WHEN CHARLES PARKER WAS SWORN IN MY ATTORNEY LODGED AN OBJECTION TO PARKER TESTIFYING AT ALL IF HE WAS BASING HIS TESTIMONY ON THE INFORMATION PROVIDED BY DIANNE MONAGHAN WHO WAS NO LONGER WITH THE D.P.S. LAB AND WAS NOT AVAILABLE FOR CROSS EXAMINATION UNDER THE COLE CASE UPHELD BY THE FIFTH CIRCUT COURT. THE FIRST OBJECTION WAS TO ANY WORK PRODUCT OF DIANNE MONAGHAN BEING OFFERED INTO EVIDENCE. THE SECOND OBJECTION WAS TO PARKERS TESTIMONY BASED UPON REVIEW OF ANY OF MONAGHANS WORK PRODUCT. THIS IS THE REFLECTION OF THE RECORD THE COURT OVER RULED THESE OBJECTIONS.

(VOLUME 4 PAGES 126, 127 TRIAL TRANSCRIPTS) TELLS OF STATES EXHIBIT NUMBER 75 IS A PHOTOGRAPH OF A LATEN PRINT THAT I IDENTIFIED SERVERAL WEEKS AGO.

(VOLUME 4 PAGE 128 TRIAL TRANSCRIPTS) REVEALED THAT STATES EXHIBIT NUMBER 75 PROVED TO BE PART OF MONAGHAN'S WORK PRODUCT WAS A MATCH TO MY LEFT RING FINGER.

(VOLUME 4 PAGES 130, 131 TRIAL TRANSCRIPTS) ASKS WHO WAS THE INVESTIGATOR WHO MADE THE INITIAL PHOTOGRAPH OF THE PRINT? PARKERS ANSWER WAS KENT KENCAID. ALSO ASKED WAS DIANNE MONAGHAN INVOLVED IN THAT AT ALL? PARKED ANSWERED YES SHE WAS THE LATEN EXAMINER SENT ON ON AN INVESTIGATION TEAM ALONG WERE KARIN SCALISE AND KENT KENCAID AS THE PHOTOGRAPHER. ALSO ASKED WAS KINCAID WORKING UNDER MONAGHAN'S SUPERVISION PARKER ANSWERED YES, ASKED WAS THAT PRINT CARD PART OF MONAGHANS FILE PARKER ANSWERED YES.

(VOLUME 4 PAGE 132 TRIAL TRANSCRIPTS) WHEN ASKED IS THIS PHOTOGRAPH THAT YOU HAVE BEEN DISCUSSING STATES EXHIBIT 75 PART OF MONAGHANS WORK FILE? PARKER ANSWERED YES IT IS ALSO ON (PAGE 132 VOLUME 4 TRIAL TRANSCRIPTS) MY ATTORNEY REURSED HIS OBJECTIONS UNDER THE COLE CASE. THE OBJECTION WAS OVERRULED A SECOND TIME.

(VOLUME 5 PAGE 53 TRIAL TRANSCRIPTS) TELLS OF KARIN SCALISE D.N.A. EXPERT WHO TELLS OF PROBLEMS WITH DIANNE MONAGHANS WORK AND MONAGHAN'S SUPERVISION AS TO WHICH SWABS TO TAKE.